IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01615-CMA-NYW

THOMAS WARNER,

    Plaintiff,

v.

NUTRIEN, LTD., F/K/A AGRIUM, INC.,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

This matter comes before the court for recommendation on Defendant Nutrien, Ltd.'s Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) ("Motion to Dismiss" or "Motion"), filed July 13, 2018. [#15]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and the memorandum dated July 16, 2018 [#17]. This court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, having reviewed the Motion and associated briefing, the applicable case law, and otherwise being fully advised, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

This court draws the following facts from the Complaint and presumes they are true for purposes of the instant Motion. Plaintiff Thomas Warner ("Plaintiff" or "Mr. Warner"), a citizen of Texas, alleges that in 2017 he was the Vice President of International Retail Operations for Agrium, Inc.—a company that later merged with

PotashCorp to form Nutrien, Ltd. [*Id.* at ¶¶ 4-5]. Defendant Nutrien, Ltd. ("Defendant" or "Nutrien")[1] is a Canadian corporation with its principal place of business located in Saskatoon, Saskatchewan and its United States headquarters in Loveland, Colorado. *See* [*id.* at ¶ 6].

Sometime in late 2017, Mr. Warner "expressed his discontent with the current direction" of Nutrien and sought "a long-term role at [Nutrien] that would be meaningful and satisfactory to him." [*Id.* at ¶ 13]. In or about January 2018, Plaintiff learned that Nutrien was investigating certain allegations lodged against Plaintiff back in September 2017. *See* [*id.* at ¶¶ 14-15]. These included a false allegation that Plaintiff was having an affair with his assistant and that Plaintiff "used an unauthorized travel agent to book company travel to South America"—an allegation previously raised to and addressed by Mr. Warner. *See* [*id.*]. Despite assurances that the investigation was "nothing to worry about and would be resolved soon," Plaintiff met with Nutrien's outside counsel who largely focused the meeting on various expense reports prepared by Plaintiff and the "business purpose" for each. [*Id.* at ¶¶ 17-18]. Nutrien terminated Plaintiff "for cause" based on Plaintiff's business expenses and unauthorized use of a travel agent on March 2, 2018. *See* [*id.* at ¶ 19].

Through his employment Mr. Warner participated in Agrium, Inc.'s Performance Recognition Plan ("PRP") and Performance Share Unit ("PSU") and Restricted Share Unit ("RSU") Plan ("PSU/RSU Plan"). *See* [#2 at ¶ 10]. Mr. Warner alleges that the PRP "was essentially an annual bonus", while the PSU/RSU Plan was a "type of bonus that

---

[1] For ease of reference, this court refers to Nutrien throughout this Recommendation when referring to the entity and its employees, supervisors, associates, and administrators of Nutrien employment plans.

effectively award[ed] stocks to participants." [*Id.* at ¶¶ 11-12]. Plaintiff alleges that at the time of his termination Nutrien informed him "that he would receive his vested PSUs and RSUs," totaling roughly $500,000, but that he would not receive any severance, 2017 PRP bonus, unvested PSUs/RSUs, or vested SARs.[2] *See* [*id.* at ¶¶ 20-22]. Nutrien did, however, offer Mr. Warner $1 million (a total exceeding his SARs and 2017 PRP bonus) in exchange for Mr. Warner signing a non-compete agreement. *See* [*id.* at ¶ 20]. In response to Mr. Warner's questioning of the scope of the non-compete agreement, Nutrien informed Plaintiff that it would withhold Plaintiff's vested PSUs and RSUs, though it increased its offer to $1.5 million (a total exceeding the withheld SARs, 2017 PRP bonus, and PSUs and RSUs) if Plaintiff would sign the non-compete agreement. *See* [*id.* at ¶¶ 22-23].

Believing he is entitled to his 2017 PRP bonus and vested PSUs and RSUs despite the "for cause" termination (and perhaps additional monies if his termination was <u>without</u> cause) and believing that Nutrien's withholding of the same violates the terms of the PRP and PSU/RSU Plan, Plaintiff filed suit against Nutrien in the Larimer County District Court. *See generally* [#1; #2]. Mr. Warner asserts claims for breach of contract (or "Claim 1") and civil theft (or "Claim 2"). *See generally* [#2]. Defendant removed this matter to this District, invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* [#1]; *see also* [#24 (denying Plaintiff's Motion for Remand)].

Defendant now moves to dismiss Mr. Warner's claims. [#15]. Plaintiff has since responded, following a stay of the response deadline pending Judge Arguello's ruling on

---

[2] The Complaint uses the term "SAR" but does not define it. *See* [#2]. Nor does the PRP or PSU/RSU Plan provide the definition of the term. Nevertheless, Plaintiff explains that he "does not sue herein for breach of the SAR plan." [*Id.* at ¶ 29].

3

Plaintiff's Motion for Remand, and Defendant has replied. Because the Motion is ripe for Recommendation, I consider the Parties' arguments below.

## LEGAL STANDARD

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulistic formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The court may also consider materials beyond the complaint if the documents are central to the plaintiff's claims, referred to in the complaint, and if the parties do not dispute their authenticity. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**ANALYSIS**

I.  **Conflicts of Law**

Before addressing the Parties' substantive arguments this court must first ascertain the law that governs Plaintiff's claims. Ordinarily, "[i]n a diversity action, [this court] appl[ies] the substantive law of the forum state, including its choice of law rules." *Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). Colorado is the forum state in this action. "In contract and tort, 'Colorado follows the 'most significant relationship' approach of the Restatement (Second) of Conflict of Laws.'" *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1236 n.7 (10th Cir. 2014) (quoting *ITT Specialty Risk Servs. v. Avis Rent A Car Sys., Inc.*, 985 P.2d 43, 47 (Colo. App. 1998)).

A.  **Choice-of-Law Provisions**

Colorado courts typically apply the law chosen by the Parties in the choice-of-law provisions to govern their contractual rights. *See, e.g.*, *Kipling v. State Farm Mut. Auto. Ins. Co.*, 159 F. Supp. 3d 1254, 1265 (D. Colo. 2016); *Wright v. Martek Power, Inc.*, 314 F. Supp. 2d 1065, 1067-68 (D. Colo. 2004). The PRP's and the PSU/RSU Plan's (collectively, "the Plans") choice-of-law provisions state, in pertinent part, "This Plan shall be governed and interpreted in accordance with the laws of the Province of Alberta and the laws of Canada applicable therein." [#2 at 13, 30]. Both Parties appear to agree that Canadian law governs Mr. Warner's breach of contract claim, and this court finds no reason to deviate from the Parties' expressed intent in the choice-of-law provisions. *See King v. PA Consulting Grp., Inc.*, 485 F.3d 577, 585 (10th Cir. 2007) (discussing

exceptions contained in § 187(2) of the Restatement (Second) of Conflict of Laws to applying the contract's choice-of-law provisions).

The Parties do, however, dispute whether the choice-of-law provisions govern Mr. Warner's civil theft claim. Defendant contends that the civil theft claim arises from the same facts as the breach of contract claim and, accordingly, Canadian law is governs Claim 2. [#15 at 6-7]. Nutrien further argues that assuming the choice-of-law provisions do not apply, Plaintiff also fails to demonstrate that Colorado has the most significant relationship to the occurrence and parties to permit a claim of civil theft under Colorado law. *See* [#15 at 6-7; #22 at 7-8]. Plaintiff counters that the choice-of-law provisions do not contemplate a claim for civil theft, and that Colorado law applies because the theft and injury occurred in Colorado. *See* [#27 at 12-13]. To resolve this preliminary issue, this court must determine whether the choice-of-law provisions are broad enough to subsume the tort claim of civil theft.

The Plans provide,

> "The Plan shall be governed and interpreted in accordance with the laws of the Province of Alberta and the laws of Canada applicable therein. . . . Any actions, proceedings or claims in any way pertaining to the Plan shall be commenced in the courts of the State of Colorado in the case of a Designated employee who was last employed in the United States by the Corporation or an Affiliate."

[#2 at 13, 30]. By the plain terms of the Plans, Canadian law governs the interpretation of the agreement and its choice-of-law provisions. [*Id.*]. Under Canadian law, "[t]he overriding concern is to determine 'the intent of the parties and the scope of their understanding'"; thus, "a decision-maker must read the contract as a whole, giving the words used their ordinary and grammatical meaning, consistent with the surrounding circumstances known to the parties at the time of formation of the contract." *Creston Moly*

*Corp. v. Sattva Capital Corp.,* [2014] 2 S.C.R. 633 (S.C.C.) at ¶ 47; *see also Thuenken v. Schweer*, [1987] 83 N.B.R. 2d 244 (N.B. C.A.) at ¶ 6 ("The contents of any express term or terms are basic to a true understanding of the nature, scope and extent of the contractual rights and duties of the parties"). "The primary interpretive principle is that when the language of the policy is unambiguous, the court should give effect to clear language, reading the contract as a whole." *Alta Vista Prods., LLC v. St. Paul Fire & Marine Ins. Co.*, 796 F. Supp. 2d 782, 786 (E.D. La. 2011) (citing *Progressive Homes Ltd. v. Lombard Gen. Ins. Co. of Canada*, [2010] 2 S.C.R. 245 (S.C.C) at ¶ 22).

This court finds that the language of the choice-of-law provisions is unambiguous in that the interpretation of the Plans will be under Canadian law and any actions, proceedings, or claims arising from the Plans will be venued in the courts of the State of Colorado. [#2 at 13, 30]. The Parties did not, however, unambiguously agree to apply Canadian law to actions related in any way to the Plans. [*Id.*]. Thus, this court turns to considering the relevant factors under the Restatement (Second) Conflict of Laws in determining the law applicable to Claim 2.

### B. Application of the Restatement (Second) Conflict of Laws

Absent a controlling choice of law provision or statute, the general approach of the Restatement is set forth in § 6 that states the relevant factors for selecting which state's substantive law to apply. Such factors include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

7

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Kipling v. State Farm Mut. Auo. Ins. Co.*, 774 F.3d 1306, 1310-11 (10th Cir. 2014) (citing Restatement (Second) Conflict of Laws § 6).  Additional factors relevant to determining the most significant relationship for tort actions include (1) the place of injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered.  *Boone v. MVM, Inc.*, 572 F.3d 809, 812 (10th Cir. 2009).

Plaintiff contends that the theft and injury occurred in Colorado, because Nutrien managed its United States employees out of Colorado and it is "reasonable to conclude that the spoils of this theft are in Colorado or have accrued to the benefit" of Nutrien in Colorado. [#27 at 12-13].  But this court finds that the Complaint is silent as to *where* the alleged theft and injury occurred.  *See* [#28 at 7-8].  Indeed, the Complaint contains only vague assertions in this regard, stating only that Nutrien withheld Mr. Warner's vested PSUs, RSUs, SARs, severance, and 2017 PRP bonus and "removed" from Mr. Warner's account his unvested PSUs, RSUs, and SARs. [#2 at ¶¶ 20-25, 37-38].  Despite Plaintiff's urging, this court cannot infer from the allegations in the Complaint that the conduct occurred in Colorado or that Mr. Warner, a Texas citizen who worked in Australia and Kansas [*id.* at ¶ 5], suffered injury in Colorado.  *See generally* [#2].  Indeed, this court finds unpersuasive Plaintiff's argument in his Response that "[b]ecause Nutrien's U.S.

8

operations are managed in Colorado, it is reasonable to conclude that its theft of Warner's ~$500,000 in cashed-out PSUs and RSUs was conceived and executed from its Colorado headquarters" or that it "is further reasonable to conclude that the spoils of this theft are in Colorado or have accrued to the benefit of the company at its U.S. headquarters in Colorado." [#27 at 12]. There are simply no facts alleged in the Complaint, if taken as true, to support these conclusory statements.

This court then turns to considering the place of citizenship, incorporation, or business of the Parties and the center of the Parties' relationship. Plaintiff is a Texas citizen and Defendant is a Canadian corporation that has its United States headquarters in Loveland, Colorado. *See* [#2 at ¶¶ 4, 6]. Plaintiff alleges that he worked for Defendant in Kansas, Australia, and again in the United States without specification. [*Id.* at ¶ 5]. There no allegations that Mr. Warner conducted any business in Colorado or that he routinely met with counterparts in Colorado. There are simply insufficient factual allegations for this court to find that Colorado bears the most significant relationship to Mr. Warner or his tort claim. Therefore, this court respectfully **RECOMMENDS** that the Motion be **GRANTED** and the civil theft claim brought pursuant to Colorado law be **DISMISSED**.

Nonetheless, Nutrien argues that even if Colorado law applies, Mr. Warner fails to plead a plausible civil theft claim. Accordingly, for the sake of completeness, this court assumes that Colorado law applies and considers Defendant's alternative arguments for dismissal of Claim 2, as well as its arguments for dismissal of Claim 1, below.

## II. Breach of Contract - Claim 1

To plead a viable breach of contract claim under Canadian law, Mr. Warner must allege that a contract existed; that he performed his contractual obligations; that Nutrien failed to perform its contractual obligations; and that he suffered damages. *See Rocky Mountain House (Town) v. Alberta Mun. Ins. Exch.* (2007), 79 Alta. L.R. 4th 141 (Alta. Q.B.) at ¶ 17. Mr. Warner alleges that Nutrien terminated him <u>without</u> cause but characterized it as "for cause" to withhold approximately $1.5 million in earned bonuses and incentives under the Plans and to coerce Mr. Warner into signing a non-compete agreement. *See* [#2 at ¶¶ 1-3, 19-25, 27-29, 31-35]. The Complaint further asserts that Mr. Warner is entitled to his 2017 PRP bonus and vested PSUs/RSUs despite the "for-cause" termination, and that he may be entitled to "unvested PSUs/RSUs and for prorated 2018 PRP" if his termination was <u>without</u> cause. *See* [*id.* at ¶¶ 28-29, 32-33].

Defendant argues that Plaintiff has no right to his 2017 PRP bonus or his vested or unvested PSUs/RSUs under the terms of the Plans, because Nutrien can cancel any vested or unvested PSUs/RSUs in the employee's account at the time of termination and has the discretion not to award PRP bonuses. *See* [#15 at 10-12; #28 at 1-6]. In addition, Nutrien contends that Plaintiff has not adequately alleged that Nutrien terminated him <u>without</u> cause because Plaintiff concedes in his Complaint that he violated Nutrien's travel and business expenses policies. *See* [#15 at 10-11; #28 at 4-5]. Though acknowledging that the Plans provide Nutrien with the right and discretion to cancel certain PSUs/RSUs and PRP bonuses, Mr. Warner contends that he has a right to his PSUs/RSUs and PRP bonus nonetheless, and that he sufficiently alleges that Nutrien terminated him <u>without</u> cause. *See* [#27 at 5-11].

The Parties' arguments focus on the Plans' terms, requiring this court to interpret those terms. In doing so, this court must give the Plans "their natural and ordinary meaning." *A.G. Clark Holdings Ltd. v. HOOPP Realty Inc.* (2013), 82 Alta. L.R. 5th 286 (Alta. C.A.) at ¶ 15. That is, "what a reasonable person would have understood from the words of the document[s] read as a whole and from the factual matrix [of their formation]." *IFP Techs. (Canada) Inc. v. EnCana Midstream & Mktg.* (2017), 53 Alta. L.R. 6th 96 (Alta. C.A.) at ¶ 79.

***The 2017 PRP Bonus***: the PRP provides that "if the employment of a Plan Participant is terminated ['for cause'], the Plan Participant will not be eligible for any award under this Plan for the Plan Year in which the Termination Date occurs . . . or for any subsequent Plan Year." [#2 at 17]. The PRP continues, "Unless otherwise determined by [Nutrien], any award relating to a Plan Year *prior* to the Plan Year in which the Termination Date occurs . . . shall continue to be payable to the Plan Participant in accordance with this Plan." [*Id.* (emphasis added)]. Conversely, if termination occurs without cause, the PRP provides, subject to Nutrien discretion, that the Plan Participant will receive (1) "any award relating to a Plan Year *prior* to the Plan Year in which the Severance Date occurs . . ." and (2) "any award relating to the Plan Year in which the Severance Date occurs . . . *pro-rated* to reflect the actual period between the commencement of the Plan Year in which the Severance Date occurs and the Severance Date . . . ." [*Id.* at 16 (emphasis added)].

The Complaint alleges that Defendant terminated Plaintiff on or about March 2, 2018, and that Nutrien did so without cause. *See* [#2 at ¶¶ 1, 3,19, 27, 32]. Thus, a fair interpretation of the PRP provides Plaintiff with a right to seek his 2017 PRP bonus and

11

perhaps a pro-rata portion of his 2018 PRP bonus if his termination was <u>without</u> cause. Nutrien, however, focuses on its discretion to pay prior PRP bonuses. It argues that the Complaint alleges that Nutrien informed Plaintiff that it would not pay his 2017 PRP bonus, which it had the right to do under the express terms of the PRP, and there are no allegations as to the date of the 2017 PRP bonus payout or that Nutrien exercised its discretion in bad faith. *See* [#15 at 11-12; #28 at 6].

Although the PRP expressly provides Nutrien with the discretion to pay PRP bonuses, whether terminated "for cause" or otherwise, I find that Plaintiff sufficiently alleges that Nutrien exercised its discretion in bad faith. Mr. Warner alleges that Nutrien improperly characterized his termination as "for cause" and refused to pay his 2017 PRP bonus to coerce him to sign a non-compete agreement—one that Nutrien did not require as a condition of employment. [#2 at ¶¶ 1-3, 20, 22-23, 25, 27]. Nutrien argues that even if it had an improper motive in terminating Mr. Warner, this does not constitute bad faith. *See* [#15 at 11; #28 at 6 & n.2]. At this juncture, I respectfully disagree.

The Supreme Court of Canada has explained that the duty of good faith does not necessarily punish intentional harm caused "in the legitimate pursuit of economic self-interest," and "should not be used as pretext for scrutinizing the motives of contracting parties." *Bhasin v. Hrynew*, [2014] 3 S.C.R. 494 (S.C.C.) at ¶ 70. But Defendant places too much emphasis on this proposition, as Canadian courts have explained that the duty of good faith applies "where one party exercises discretionary power under the contract," in which case "limitations are implied on the exercise of discretion in order to give effect to the reasonable expectations of the parties" so as not to undermine the interests of the other party. *See IFP Techs. (Canada), Inc.*, 53 Alta. L.R. 6th 96 at ¶¶ 187-94 (explaining

that the duty of good faith "does not compel a party to put the interests of others above its own," but requires each party to act reasonably and honestly to not "substantially nullify the contractual objectives or cause significant harm to the other party").  I find sufficient at this stage Mr. Warner's allegations that Nutrien exercised its discretion in bad faith not to pay his 2017 PRP bonus as way to coerce him to sign a non-compete agreement.  Thus, this court respectfully **RECOMMENDS** that the Motion to Dismiss be **DENIED** to the extent that Claim 1 is based on Plaintiff's allegations that Defendant exercised its discretion in bad faith.

> ***The "Vested" PSUs/RSUs***: the PSU/RSU Plan provides,
>
> "If the employment of a Designated Employee is terminated for Cause . . ., the Designated Employee will not be entitled to *any* payment of PSUs [or RSUs] relating to the PSU Performance Period [or RSU Restricted Period] in which the Termination Date of the Designated Employee's employment occurs.  Any *such* PSUs [or RSUs] recorded in the Designated Employee's PSU [or RSU] Account as at such Termination Date shall be cancelled without payment (for greater certainty, whether *vested or unvested*).

[#2 at 37, 40 (brackets and emphasis added)].  Defendant argues that the plain language of the PSU/RSU Plan expressly provides Nutrien the right to cancel any vested or unvested PSUs or RSUs in the employee's account if terminated "for cause."  But this court agrees with Mr. Warner that the PSU/RSU Plan does not provide Nutrien the right to cancel *all* vested or unvested PSUs or RSUs in an employee's account when terminated for cause.  *See* [#27 at 8-9].  Rather, the PSU/RSU Plan gives Nutrien the right to cancel only those vested or unvested PSUs/RSUs "relating to the PSU Performance Period [or RSU Restricted Period] in which the Termination Date of the Designated Employee's employment occurs." [#2 at 37, 40]; *see also* [*id.* at 32 (defining PSU Performance Period), 38 (defining RSU Restricted Period).  Accordingly, Mr. Warner

13

would have a right to his PSUs/RSUs from *prior* PSU Performance Periods or RSU Restricted Periods.

It is not entirely clear from the Complaint that Plaintiff seeks PSUs/RSUs from performance periods *prior* to his termination. *See* [#28 at 2-4]. The Complaint alleges that Nutrien initially informed Plaintiff that he would receive his "vested PSUs and RSUs," though not his unvested PSUs and RSUs, but that Nutrien later informed him that he would not receive his "approximately $500,000 in vested PSUs and RSUs." [#2 at ¶¶ 20, 22]. Mr. Warner makes no distinction between PSUs and RSUs relating to the PSU Performance Period or RSU Restricted Period in which his termination date (March 2, 2018) occurred or some *prior* period.

In his Response, Plaintiff states that he intended the term "vested" as used in his Complaint to mean "PSUs/RSUs for which the Performance Period had been completed" such that "compensation had been fully earned at that point and belonged to [Plaintiff] even if he resigned or was properly terminated for cause"—which is distinct from the definition of "vested" in the PSU/RSU Plan. [#27 at 3 n.2; #2 at 34-35 (explaining that PSUs vest based on Nutrien's TSRs and employee performance metrics), 38-39 (explaining that RSUs vest at the close of the RSU Restricted Period). Though not entirely clear from the Complaint, this court agrees that Plaintiff could seek his vested PSUs/RSUs from *prior* performance periods even if terminated "for cause." I conclude, then, that Plaintiff should be permitted to proceed with Claim 1 to the extent he seeks vested PSUs/RSUs from *prior* performance periods, but that he cannot proceed to the extent he seeks vested PSUs/RSUs from the performance period in which his termination occurred. Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss be

**GRANTED** to the extent Claim 1 seeks vested PSUs and RSUs from the performance period in which Plaintiff's termination occurred, but **DENIED** to the extent Claim 1 seeks vested PSUs/RSUs from performance periods *prior* to Plaintiff's termination.

*Termination <u>Without</u> Cause*: Nutrien contends that Mr. Warner fails to plead that his termination was <u>without</u> cause, because his allegations are "conclusory and unsupported" and any allegation concerning an improper motive is irrelevant under Canadian law. *See* [#15 at 10-11; #28 at 4-5 at n. 2]. Though the allegations in this regard are not robust, I respectfully conclude that Mr. Warner sufficiently alleges his termination was <u>without</u> cause despite Nutrien's "for cause" characterization.

The Complaint alleges that Nutrien terminated him for his business expenses and the use of the non-approved travel agency. [#2 at ¶ 19]. But Mr. Warner alleges that Nutrien's outside counsel only "touched upon the use of the non-approved travel agency for the South America trip," [*id.* at ¶ 18]—a concern that Nutrien previously raised to Plaintiff and which Mr. Warner addressed months earlier, resulting in changes to the travel booking procedures used by Plaintiff's department, [*id.* at ¶ 14]. Plaintiff also asserts that these issues generated an investigation only after Mr. Warner had expressed his uncertainty about remaining at Nutrien, and that Nutrien assured him that the investigation was "nothing to worry about and would soon be resolved." [*Id.* at ¶ 16, 18]. Finally, Plaintiff avers that Nutrien improperly characterized Plaintiff's termination as "for cause" to "put financial pressure on Mr. Warner so Nutrien could strongarm him into signing a non-compete agreement." [*Id.* at ¶ 1]; *see also* [*id.* at 2-3, 20, 22-23, 25, 27].

As mentioned, Canadian courts recognize an implied duty of good faith that requires parties to act reasonably and honestly when performing their contractual

15

obligations. Plaintiff alleges that he "did not undertake any action or inaction which would justify a 'for cause' termination", see [*id.* at ¶ 3], while acknowledging his unauthorized travel and inability to recall all the details of questioned business expense reports, see *e.g.*, [*id.* at ¶¶ 14, 18].[3] Drawing all reasonable inferences in Plaintiff's favor, this court finds Mr. Warner's allegations sufficient at this juncture that his termination was <u>without</u> cause and that Nutrien had an improper motive when terminating Plaintiff "for cause." Thus, I respectfully **RECOMMEND** that the Motion to Dismiss be **DENIED** as to Claim 1 arising from Plaintiff's claims that Nutrien terminated him <u>without</u> cause.

## III.     Civil Theft – Claim 2

Under Colorado law, "[c]ivil theft is established where (1) defendant knowingly obtained control over plaintiff's property without authorization, or by threat or deception; and (2) with the specific intent to permanently deprive plaintiff of the benefit of the property." *Electrology Lab., Inc. v. Kunze*, 169 F. Supp. 3d 1119, 1161 (D. Colo. 2016) (applying Colorado law); *see also* Colo. Rev. Stat. §§ 18-4-401 (criminalizing theft of property), 405 (providing a civil remedy for violations of § 401). Nutrien moves to dismiss Claim 2, because Mr. Warner does not (and cannot) allege that Nutrien was not authorized to cancel his vested PSUs and RSUs or that Nutrien knew it was not authorized to cancel his vested PSUs and RSUs and because the economic loss rule

---

[3] Though Plaintiff argues that this conduct does not amount to "cause" as defined by the Plans, *see* [#27 at 6]; *see also* [#2 at 10, 26 (defining "Cause")], this court cannot determine as a matter of law whether Mr. Warner's termination was <u>with</u> or <u>without</u> cause in the absence of any employment agreement (the likely authority for his termination) that defines "cause." *Cf.* [#2 at 10 (defining "Cause" under the PRP to include "anything that would constitute cause for termination . . . including under the terms of any *employment agreement* . . ." (emphasis added and parenthesis omitted))].

16

bars Claim 2. *See* [#15 at 8-9; #28 at 8-10]. This court respectfully agrees with Nutrien's latter point and therefore focuses on it.

Pursuant to Colorado's economic loss rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000) (footnote omitted). That is, the duty must arise from general tort law duties "to protect citizens from risk of physical harm or damage to their personal property," not obligations based on bargained-for exchanges. *See In re Estate of Gattis*, 318 P.3d 549, 553 (Colo. App. 2013) (internal quotation marks and citations omitted). The inquiry focuses on the source of the duty that the defendant allegedly breached; three factors are relevant to the court's consideration: (1) whether the tort relief sought is the same as the contractual relief; (2) whether there is a recognized common law duty in tort; and (3) whether the tort duty is distinct from the contractual duty. *See Electrology Lab., Inc.*, 169 F. Supp. 3d at 1152 (citing *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004)).

In the context of civil theft claims, a duty independent of a contractual duty "is not shown simply because a duty also exists outside the contract." *Makoto USA, Inc. v. Russell*, 250 P.3d 625, 627 (Colo. App. 2009). This is especially so where "plaintiff's contract and theft claims [are] inextricably intertwined: the latter could not be proven without first proving the former." *Id.* at 629. Indeed, the economic loss rule precludes contract cases from being 'recast as tort cases in order to escape the limitations that the law has placed on suits for breach of contract[.]'" *W. Convenience Stores, Inc. v. Thielen*,

17

No. 09-cv-02626-LTB-BNB, 2011 WL 866755, at *7 (D. Colo. Mar. 14, 2011) (quoting *Makoto USA, Inc.*, 250 P.3d at 629).

Nutrien argues that Claim 2 "arises solely from an alleged breach of contract, and [Mr.] Warner does not allege any independent, non-contractual duty not to cancel the [PSU/RSU] units." [#15 at 9]; *see also* [#28 at 10]. Though conceding that the "accrual of PSUs and RSUs occurred pursuant to contract, as did the conversion of such units to cash," Mr. Warner argues that the conversion to cash "constituted his fully earned compensation" that Nutrien "raided" and "stole" from his account. *See* [#27 at 14]. Mr. Warner likens the situation to "an employer who breaks into his employee's house to steal wages after they were paid" and, thus, Nutrien had a duty independent from the PSU/RSU Plan not to take those funds. *See* [*id.* at 15]. I respectfully disagree with Plaintiff.

Plaintiff insists that "vested" as used in the Complaint does not have the same meaning as used in the Plans, but rather means compensation or cash that Plaintiff already earned. *See* [#27 at 3 n. 2, 14-15]. But unlike the example offered in his Response, Plaintiff does not allege that he had already converted the PSUs and RSUs into a sum of cash that Defendant then took. *See generally* [#2]. Instead, the civil theft claim seeks the same relief as that sought for the alleged breach of contract: compensation for the PSUs and RSUs Plaintiff believes Nutrien owes him pursuant to the PSU/RSU Plan that Nutrien withheld. *Compare* [#2 at ¶¶ 31-34] *with* [*id.* at ¶¶ 37-39]; *see also Pawluk v. Bank of Montreal* (1994), 20 Alta. L.R. 3d 76 (Alta. Q.B.) at ¶ 122 (regarding contract damages, "the rule is that the plaintiff is entitled to be placed, so far as money can do it, in the same position as he would have been in had the contract been performed."); *Trizec Equities Ltd. v. Ellis-Don Mgmt. Servs. Ltd.* (1998), 66 Alta. L.R. 3d

18

1 (Alta. Q.B.) at ¶ 798 (noting that contract damages are those arising naturally from the contract as well as those contemplated by the Parties at formation that are the probable result of the breach).

Next, to state a cognizable claim for civil theft in this action, Plaintiff must identify a common law duty distinct from Defendant's contractual duties under the PSU/RSU Plan. Here, all the duties that Plaintiff relies upon arise from the PSU/RSU Plan, and Mr. Warner's entitlement to his claimed damages require him to first prove a breach of the PSU/RSU Plan. *See Gross v. Silverberg*, No. 10-cv-00687-REB-BNB, 2010 WL 5147594, at *4 (D. Colo. Dec. 13, 2010) ("Plaintiffs' claim for civil theft, although somewhat vaguely pled, clearly must be based on plaintiffs' failure to receive the benefit of the bargain for which they contracted."). Indeed, there are no allegations to the effect that Nutrien took earned cash (or some other corpus of cash) from Mr. Warner's personal accounts which may give rise to an independent duty in tort. *Cf. Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1193-95 (Colo. App. 2008) (holding that the economic loss rule did not preclude a civil theft claim because the defendant stole escrowed monies for his personal benefit that he had no right to take, and the plaintiff had no contractual remedy because the defendant was not party to the contract). Claims 1 and 2 involve a common nucleus of bargained-for exchanges under the RSU/PSU Plan. Thus, I conclude that the economic loss rule bars Plaintiff's civil theft claim,[4] and I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED** as to Claim 2 for this additional reason.

---

[4] This court notes that in a recently unpublished decision a division of the Colorado Court of Appeals held that the economic loss rule did not bar the plaintiff's claim under the civil theft statute. *See Bermel v. BlueRadios, Inc.*, --- P.3d ----, 2017 WL 710485, at *3-5 (Colo. App. Feb. 23, 2017). But the Colorado Supreme Court granted certiorari in *Bermel* to consider, "Whether the economic loss rule bars Respondent's simultaneous recovery for its breach of contract claim and for its civil theft claim under section 18–4–405, C.R.S.

## CONCLUSION

For the reasons stated herein, I respectfully **RECOMMEND** that:

(1) Nutrien's Motion to Dismiss [#15] be **GRANTED IN PART and DENIED IN PART**.[5]

DATED: December 12, 2018

BY THE COURT:

*Nina Y. Wang*
Nina Y. Wang
United States Magistrate Judge

---

(2016), (the 'civil theft statute') based on Petitioner's single act of breach of contract." *See Bermel v. BlueRadios, Inc.*, No. 17SC246, 2017 WL 3016382, at *1 (Colo. July 3, 2017). Because the Colorado Supreme Court has yet to rule on the issue, and because this court finds *Bermel* inconsistent with established Colorado precedent concerning the economic loss rule, I find *Bermel* unpersuasive.

[5] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).